IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 00-cv-01841-LTB

RICKY EUGENE CLARK,
on behalf of himself and all others similarly situated,

        Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
an Illinois Corporation,

        Defendant.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

       This class certification motion is before me on Plaintiff, Ricky Eugene Clark's, Motion for

Class Certification [**Docket # 205**], Defendant, State Farm Mutual Automobile Insurance

Company's ("State Farm"), Response in Opposition [**Docket # 221**], and Plaintiff's Reply

[**Docket # 225**] and Supplemental Submission [**Docket # 226**].

       Plaintiff moves this Court to certify the following Class pursuant to FED. R. CIV. P.

23(b)(2) and/or (b)(3):

> All pedestrians who received No-Fault benefits under a Colorado State Farm
> automobile insurance policy where the governing policy documents at the time of
> the accident were issued prior to January 1, 1999.  Excluded from the Class are all
> State Farm executives, their legal counsel, and their immediate family members,
> the Court and its staff, and all employees of proposed Class Counsel [**Docket #
> 205**].

Oral arguments would not materially assist the determination of this motion.  After consideration

of the parties' motions, briefs, and the case file, and for the reasons set forth below, I DENY

Plaintiff's Motion for Class Certification [**Docket # 205**].

## I. BACKGROUND

This case arises out of an automobile insurance dispute.  On July 18, 1996, Plaintiff was

struck by a vehicle driven by a State Farm insured driver.  As a pedestrian, Plaintiff was insured

under the driver's Personal Injury Protection ("PIP") policy pedestrian coverage.  At the time the

policy was issued, State Farm did not offer extended PIP benefits for pedestrians.  Instead, State

Farm provided coverage limited to $50,000.00 in medical expenses, $50,000.00 in rehabilitation

expenses, up to $400.00 per week in lost wages for up to fifty-two weeks, $25.00 per day in

essential services costs for up to 364 days, and death compensation up to $1,000.00.  In Plaintiff's

case, this amounted to $48,617.48 in medical costs, $3,376.50 in essential services, and

$15,730.00 in lost wages, respectively.

On January 8, 1998, the Colorado Court of Appeals ruled in *Brennan v. Farmers Alliance*

*Mutual Insurance Co.*, 961 P.2d 550 (Colo. Ct. App. 1998), that the Colorado Auto Accident

Reparations Act ("CAARA") required insurance companies to offer policyholders the option of

buying extended PIP benefits for pedestrians of up to $200,000.00.  *Brennan* reformed the

insurance contract at issue to allow the injured pedestrian to recover the $200,000.00 in extended

benefits that would have been available had they been offered.  *Id*. at 554.

On August 24, 2000, Plaintiff brought the instant suit under *Brennan* on behalf of himself

and all injured pedestrians who were not paid extended benefits due to State Farm's failure to

offer such benefits to its policyholders.  I dismissed Plaintiff's claims on June 20, 2001, on the

grounds that *Brennan*—by its own terms—did not apply retroactively to reform the policy in

effect at the time of Plaintiff's accident some eighteen months prior.  The Tenth Circuit reversed and remanded to determine the effective date of reformation and the amount of extended PIP benefits—if any—to which Plaintiff was entitled.  *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234 (10th Cir. 2003) ("*Clark I*").

On remand, I determined the effective date of reformation to be December 19, 2003—the date my order on remand was entered.  *Clark v. State Farm Mut. Auto. Ins. Co.*, 292 F. Supp. 2d 1252 (D. Colo. 2003) ("*Clark II*").  Once reformed, I held the insurance policy provided Plaintiff with $200,00.00 in aggregated PIP coverage and awarded Plaintiff $132,276.02—the difference between the $200,000.00 aggregate policy limit and the $67,723.98 State Farm already paid to Plaintiff.  *Id.* at 1268.  In light of the December 19, 2003, reformation date, I dismissed Plaintiff's remaining claims.  *Id.* at 1269.  The Tenth Circuit affirmed in full, *Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703 (10th Cir. 2005), but the class certification question remains.

## II.  CLASS CERTIFICATION

The party seeking to certify a class must first demonstrate that all four elements of Rule 23(a) are clearly met.  *Shook v. El Paso County*, 386 F.3d 963, 968 (10th Cir. 2004).  Although I must accept the substantive allegations of the complaint as true, I will not certify a class action until I am satisfied—after a rigorous analysis of the legal and factual issues presented by Plaintiff's complaint—that Plaintiff meets this burden.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Shook*, 386 F.3d at 968; *Masri v. Wakefield*, 106 F.R.D. 322, 324 (D. Colo. 1984).  This inquiry requires me to analyze the substantive claims and defenses of the parties and the essential elements of those claims and defenses.  *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 381 (D. Colo. 1993).

Once I am satisfied that Plaintiff meets all four elements of Rule 23(a), I then determine whether Plaintiff's action falls within one of three categories of suit set forth in Rule 23(b). *Shook*, *supra*, 386 F.3d at 971.  Although *Falcon* only required a rigorous analysis of the 23(a) elements, the same rigorous analysis should be applied to the 23(b) elements.  *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 33 n.3 (2d Cir. 2006) ("We see no reason to doubt that what the Supreme Court said about Rule 23(a) requirements applies with equal force to all Rule 23 requirements, including those set forth in Rule 23(b)(3)").

Because class certification is subject to later modification, where the case is close, I will err in favor of allowing maintenance of the class action.  *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602 (D. Colo. 1990) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968)).  If the proposed class is too broad or indefinite, I have discretion to limit or redefine the class in an appropriate manner to bring the action within Rule 23.  Even if I find that all the requirements of Rule 23 are satisfied, however, I retain discretion to not certify the class if certification would be impractical. *See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988); *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002).

<u>A. Rule 23(a) requirements</u>

Rule 23(a) requires a plaintiff clearly show under a strict burden of proof that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  *Trevizo v. Adams*, 455 F.3d 1155, 1161–62 (10th Cir. 2006); *Reed, supra*, 849 F.2d at 1309;  FED. R. CIV. P. 23(a).

### 1.  Numerosity

Rule 23(a)(1) places the burden upon Plaintiff establish that the class he seeks to represent is so numerous as to make joinder impracticable.  *Trevizo*, *supra*, 455 F.3d at 1162. Impracticability of joinder must be positively shown and cannot be speculative.  *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005).  There is no set formula or magic number that conclusively decides this inquiry.  *Trevizo*, 455 F.3d at 1162 (holding it was not error for the district court to deny class certification when the putative class consisted of eighty-four individual plaintiffs who could be located for joinder).

The numerosity determination is a highly fact-specific case-by-case inquiry.  *Id*.  A variety of factors, including the location of the putative class members and whether their names and addresses are easily ascertainable, may contribute to the analysis.  7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1762 (2d ed. 1986) ("WRIGHT & MILLER").  Thus, when class members—like those in the instant matter—can be identified from readily available records and are located in a single geographic location, this cuts against impracticability.  *Id.*; *see also Rodriguez v. Bar-S Food Co.*, 567 F. Supp. 1241, 1247 (D. Colo. 1983).  However, if the number of plaintiffs is "sufficiently large that it would be impracticable and a heavy burden on th[e] court were certification refused," the numerosity requirement may nonetheless be met.  *Rodriguez*, 567 F. Supp. at 1247.  To overcome the presupposition against numerosity in this case, therefore, Plaintiff must show that the number of class members who can complain State Farm failed to provide them with the required coverage is sufficiently high as to make joinder impracticable.  *See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 716 (5th Cir. 1994).

The determination of the number of potential plaintiffs in this case depends in large part on the applicable "class period": the time period during which a pedestrian—injured in an accident with a State Farm policyholder where the governing policy document at the time of the accident failed to offer extended PIP coverage for pedestrians—qualifies as a class member.  State Farm argues the class period is August 24, 1997, through November 30, 1998.  Plaintiff argues the class period "begins far earlier" and extends beyond 1998.  While I agree the class period may include pedestrians who were *in accidents* prior to August 24, 1997, I do not agree that the statute of limitations should extend to those pedestrians with *causes of action* accruing before that date.

Plaintiff argues I may not consider the statute of limitations in my class certification analysis, and cites a handful of cases that appear to support his argument.  However, these cases do not consider the impact of statutes of limitation on calculating *numerosity*.  Instead, they stand for the well-supported rule that a statute of limitations defense does not prevent certification if the appropriate Rule 23 factors—including numerosity—are otherwise met.  *See, e.g., Cook, supra*, 151 F.R.D. at 386; *Rischoff v. Commodity Fluctuation Sys., Inc.*, 111 F.R.D. 381, 382–83 (E.D. Pa. 1986).  Case law holds that statutes of limitation should, in fact, be considered when calculating numerosity: "Putative class members whose grievances are barred by the statute of limitations . . . cannot be counted toward computation of the class."  *Nat'l Ass'n of Gov't Employees, supra*, 40 F.3d at 716.

Plaintiff filed this action on August 24, 2000.  The statute of limitations for claims brought by pedestrians under the CAARA is three years.  *See Dawson v. Reider*, 872 P.2d 212, 213 (Colo. 1994) (construing 13-80-101(1)(j) (1987)).  When an insurer fails to offer extended PIP benefits,

the statute begins to run—at the latest—on the last date lost-wages benefits are paid.  *See Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1120–21 (10th Cir. 2005).  While the limitations-period start date could be as early as the date of the accident, for the purposes of this class certification I accept Plaintiff's allegations as true.  Thus, in my numerosity calculation, any pedestrian who received a final lost-wages payment on or after August 24, 1997, may be considered a member of the putative class—regardless of the date of the accident.

The parties also dispute whether the end date for eligible claims is January 1, 1999, or November 30, 1998.  State Farm argues it eliminated the pedestrian limitation from all of its policies with the issuance of Endorsement 6850AJ in November 1998.  Plaintiff claims the Endorsement had an effective date of January 1, 1999.  This is a question of fact the resolution of which would require I delve improperly into the merits of this matter.  For the purposes of my numerosity analysis, therefore, I accept Plaintiff's proffered end date of January 1, 1999.

In light of the above analysis, the putative class includes—at the most—all pedestrians who were injured on or before December 31, 1998, and who received a final lost wages payment on or following August 24, 1997.  Not all pedestrians who were injured in that time frame, however, may be considered class members for the purpose of assessing numerosity.  Instead, only those pedestrians who would have received additional benefits under an extended PIP policy can be counted.  *See Nat'l Ass'n of Gov't Employees, supra*, 40 F.3d at 715–16.  Under the CAARA, State Farm was required to offer compensation for all medical costs, rehabilitation costs, and eighty-five percent of all lost wages, subject to a cap of $200,000.00.  Thus, the only pedestrians who can complain they were injured by State Farm's failure to offer extended PIP benefits are those who suffered more than $470.59 per week in lost wages—or suffered lost

wages longer than fifty-two weeks—and those who suffered more than $50,000.00 in medical or rehabilitation costs.

After properly limiting the pool of potential plaintiffs to those who were harmed in the appropriate time period, the question still remains whether the number of such pedestrians is sufficient to positively show that joinder would be impracticable or unduly burdensome upon this Court despite the fact that the plaintiffs are concededly located in one geographical area and easily identifiable through State Farm's records. The burden is on Plaintiff to make this showing with positive proof, not mere speculation. *Trevizo*, *supra*, 455 F.3d at 1162. Plaintiff fails to meet this burden.

Plaintiff's invocation of a proposed class that "easily contains over 3000 members" is merely a guess based upon a time frame that extends well beyond the limitations period and includes every pedestrian injury, regardless of the damages suffered. State Farm, on the other hand, applied these limitations and uncovered 115 potential plaintiffs. (State Farm erroneously restricted its search to an accident date of August 1, 1997, not a last payment date of August 24, 1997, as I have required above. However, State Farm's search properly included an end date of December 31, 1998. Nonetheless, in light of the apparent preference of a majority of plaintiffs to settle their claims with State Farm extrajudicially, *see infra*, the under-inclusive search does not affect my holding here.) Of these 115, sixty-five have now been paid the amounts they would have been due under an extended PIP policy. Although these sixty-five could be included under the class definition, it is unlikely they have colorable claims. Contrary to Plaintiff's assertions, this creates a numerosity problem.

The fact that a class may initially include persons who have not suffered a remediable

injury is not important to the numerosity inquiry unless it is shown that most, if not all, of the potential class members have no claims to be asserted by the class representatives. *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 639 (D. Colo. 1986). Thus far, a majority of potential plaintiffs opted to receive, and did receive, the maximum amount of enhanced PIP benefits available to them. This situation is analogous to that in *Reed v. Bowen*, where a class of 122 putative plaintiffs was shown to exist but the class representative failed to show that any of these individuals were unable to resolve their disputes administratively. *See Reed, supra*, 849 F.2d at 1310 n.3; *see also Kohn v. American Hous. Found., Inc.*, 178 F.R.D. 536, 540 (D. Colo. 1998) (holding that joinder may well be practicable because—although potential plaintiff class could consist of up to 294 plaintiffs—the class representative had failed to show an adequate number of plaintiffs interested in resolving their claims through class litigation beyond a speculative level).

While not conclusive as to the merits of Plaintiff's claims, the overwhelming preference of potential plaintiffs to settle their claims extrajudicially strongly suggests the number of class members who have colorable claims they wish to pursue against State Farm is small. Plaintiff asserts nothing to overcome this suggestion other than speculation. "It is neither practical nor prudential to engage the powerful machinery of a class action on the basis of a hypothetical." *Reed, supra*, 849 F.2d at 1311. Thus, Plaintiff fails to "show 'under a strict burden of proof'" that the number of potential plaintiffs is so high as to make joinder impracticable. *See Trevizo, supra*, 455 F.3d at 1162 (10th Cir. 2006) (quoting *Reed*, 849 F.2d at 1309).

## 2. Commonality

Rule 23(a)(2) provides that a class may be maintained only if there are questions of law or fact common to the class. *See Neiberger, supra*, 208 F.R.D. at 315. "This does not require that

all the questions of law or fact raised by the dispute be common; nor does it establish any

quantitative or qualitative test of commonality." *Cook, supra*, 151 F.R.D. at 384.

While there is some dispute within the courts over whether Plaintiff need only show a

single issue common to the class or whether the text of Rule 23(a)(2)—requiring one or more

"*questions* of law or fact common to the class" (emphasis added)—should be taken at its face

value, commonality is met here under either inquiry. *See, e.g., J.B. ex rel. Hart v. Valdez*, 186

F.3d 1280, 1288 (10th Cir. 1999) (holding one common question is sufficient); *Bayles v. Am.

Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1059 (D. Colo. 1996) (holding more than one

common question need exist).  During the class period, State Farm uniformly failed to offer

extended PIP coverage for pedestrians.  This common issue of fact among all potential class

plaintiffs undergirds every claim.  Because State Farm uniformly failed to offer extended PIP

coverage for pedestrians, they would be entitled to reformation.  This is also a common issue

among all plaintiffs.  While it is true that the reformation date, level of liability, benefits, and

damages would need to be calculated on an individual basis, this does not cut against my finding

of commonality.

### 3.  Typicality

Rule 23(a)(3) requires a representative's individual claims be typical of the claims of the

class members he seeks to represent.  *Rector v. City and County of Denver*, 348 F.3d 935,

949–50 (10th Cir. 2003).  The positions of the class representative need not be identical to those

of the class members so long as there is a sufficient nexus between the class representative's

claims and the common questions of law or fact which unite the class.  *Queen Uno Ltd. P'ship v.

Coeur D'Alene Mines Corp.*, 183 F.R.D. 687, 691 (D. Colo. 1998).  Typicality is not normally a

difficult hurdle so long as the claims of the named plaintiff and the other class members are based on the same legal or remedial theory. *Neiberger, supra*, 208 F.R.D. at 316.

By definition, however, "class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23." *Rector*, *supra*, 348 F.3d at 950. Likewise, if the class representative's claim is moot at the time the district court decides whether to certify the putative class, the class representative fails to meet the typicality requirement. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980) ("*Roper*"); *Murray v. Auslander*, 244 F.3d 807, 810–11 (11th Cir. 2001).

Plaintiff argues his claims have been "involuntarily mooted" and should be allowed to proceed. While such a legal theory has been recognized by the United States Supreme Court, this is clearly not a case of that nature. As an initial matter, the cases cited by Plaintiff do not address typicality and explicitly leave open the question whether a plaintiff is a proper class representative once his claims have been mooted. *See, e.g., U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 405–08 (1980); *Roper, supra*, 445 U.S. at 332–37; *Reed, supra*, 849 F.2d at 1311–13.

In *Roper*, the defendant bank—following the district court's denial of class certification—offered the named plaintiffs the full amount they would have been due had the matter been adjudicated in their favor. 445 U.S. at 337. In light of the offer, the district court entered final judgment in plaintiff's favor, over their objection. *Id*. at 330. Prior to reaching the Supreme Court, the Fifth Circuit set aside the district court's judgment. *Id*. at 337. The Supreme Court affirmed and allowed plaintiff to appeal the adverse certification ruling. *Id*. at 337–40. Here, in contrast, Plaintiff's judgment—now paid and satisfied—was achieved through extensive litigation, including two appeals to the Tenth Circuit, the latter of which affirmed my entry of

judgment in full.  Plaintiff now claims that the $200,000.00 judgment he so vigorously sought—and which State Farm opposed with equal vigor—was, in fact, an "involuntary settlement" resulting from State Farm's surreptitious attempt to "pick him off" by mooting his claims over his objection.  This quixotic contention is beyond preposterous.  This "simply [is] not a case where the class-action defendant successfully prevented effective resolution of a class certification issue. . . . [N]o unilateral action by the Defendant rendered the plaintiffs' claims inherently transitory."  *See Weiss v. Regal Collections*, 385 F.3d 337, 349 (3d Cir. 2004) (citations and internal formatting omitted).

The remaining cases cited by Plaintiff stand for an altogether different rule: although a plaintiff finds his claim mooted by a Rule 68 offer, he may nonetheless appeal a denial of class certification.  *See Weiss, supra*, 385 F.3d at 347–49.  Here, Plaintiff won a judgment on the merits; there was no Rule 68 offer.  Plaintiff's claims do not meet the typicality requirement.

### 4.  Adequacy of representation

Rule 23(a)(4) requires the class representative fairly and adequately protect the interests of the class.  The requirement of adequacy of representation must be stringently applied because members of the class may be bound by the outcome of class litigation even though they may be unaware of the proceedings.  *See Alberton's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463–64 (10th Cir. 1974).  Adequacy is determined by resolution of two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).

Plaintiff's counsel appears fully capable of prosecuting this class action.  However,

Plaintiff does not meet his own task of clearly showing under a strict burden of proof that his interests are concurrent with the putative class and that he will vigorously prosecute this action on their behalf.  When a named plaintiff's claim is moot, it makes him presumptively—though not conclusively—inadequate unless the defendant has procured the mootness of the plaintiff's claim as part of its underlying strategy.  *See Culver v. City of Milwaukee*, 277 F.3d 908, 912 (7th Cir. 2002); *Reed, supra*, 849 F.3d at 1312; *Spivak v. Petro-Lewis Corp.*, 120 F.R.D. 693, 695 (D. Colo. 1987); *see also E. Tex. Motor Freight Sys., Inc., v. Rodriguez*, 431 U.S. 395, 404 (1977) (holding a class representative must be part of the class and possess the same interest and suffer the same injury as the class members).  As noted in my discussion of typicality, *supra*, that is not the case here.  Instead, after fully and vigorously litigating his claims, Plaintiff won a successful and now-final judgment on the merits.

The burden is on Plaintiff to provide "counterbalancing reasons to suggest that the class should be certified despite the mootness of [his] claims."  *Reed*, *supra*, 849 F.2d at 1313. Plaintiff's assurance that he remains "fully committed to obtaining class certification" does not meet this burden and is illusory in light of the fact that he has nothing to gain or lose from the future outcome of this case.  Plaintiff is nothing more at this point than "a curious onlooker."  *See Culver*, *supra*, 277 F.3d at 912–13.

### B.  Rule 23(b) requirements

Even if Plaintiff met the four Rule 23(a) requirements, he also would have to meet at least one of the categories in Rule 23(b).  Plaintiff requests certification under Rule 23(b)(2), or, alternatively, Rule 23(b)(3).

1.  Rule 23(b)(2)

Classes may be certified pursuant to Rule 23(b)(2) when "the party opposing the class has

acted or refused to act on grounds generally applicable to the class, thereby making appropriate

final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Plaintiff seeks reformation of the insurance policies, a type of equitable relief that falls within the

scope of Rule 23(b)(2).  However, Plaintiff also seeks substantial money damages of up to

$150,000.00 per plaintiff.  (Plaintiff's claim itself resulted in a damages award of $132,276.02 and

a review of the outstanding claims provided by State Farm shows numerous claims in the tens of

thousand of dollars or more.)

Rule 23(b)(2) is silent as to whether monetary remedies may be sought in conjunction with

injunctive relief, but the Advisory Committee Notes suggest that at least some form of monetary

relief is permissible so long as money damages are not the predominant relief sought.  *See*

*Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir. 1995).  The predominant-relief

inquiry—not to be confused with the predominance inquiry under Rule 23(b)(3), discussed

*infra*—allows courts to ensure that insignificant or sham requests for injunctive relief do not

provide cover for Rule 23(b)(2) certification of claims that are brought essentially for monetary

recovery.  *See, e.g., Robinson v. Metri-North Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir.

2001); *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1008 (3d Cir. 1986).  The inquiry looks at the

type of relief available to the group and the individuals, however, and does not inquire into the

subjective intentions of the class representative and their counsel.  *See In re Monumental Life Ins.*

*Co.*, 365 F.3d 408, 415 (5th Cir. 2004).

A court should be cautious to certify a 23(b)(2) class where significant monetary damages

are available—and consequently may be made unavailable if class litigation is unsuccessful—because Rule 23(b)(2) does not provide class members with an absolute right of notice or the right to opt-out of the class. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 412–13 (5th Cir. 1998).  Where the amount of damages available to each individual plaintiff is high, the presumed cohesiveness and homogeneity among class members that underlies the Rule 23(b)(2) class is less that certain.  *Id*.  Simply put, the more each plaintiff has to lose, the less likely he will be to put his faith in the class: "as claims for individually based money damages begin to predominate, the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases, thereby making class certification under (b)(2) less appropriate." *Id*. at 413 (internal citations omitted).

While the Tenth Circuit has not articulated a precise standard by which to determine whether monetary damages predominate, other courts have developed two possible approaches. *See* WRIGHT & MILLER, *supra*, § 1784.1.  The first approach was adopted by the Fifth Circuit in *Allison v. Citgo Petroleum Corp*.  Under *Allison*, when the monetary damages sought depend more on the circumstances and merits of each potential class member's case than the actions of the defendant toward the class as a whole, monetary relief predominates. *Allison*, *supra*, 151 F.3d at 414–15.  However, if the money damages are incidental to the equitable relief—in that the money damages flow directly to the class as a whole, rather than to each individual member of the class—then money damages do not predominate. *Id*. at 415.

Incidental damages are those that arise out of liability alone, without an additional hearing for each member of the class to determine their share of the damages, if any. *Id*.  If determining damages for individual plaintiffs can be done mechanically, using objective standards, the damages

will be considered incidental, even where the calculations would be laborious. *See In re Monumental Life Ins. Co., supra*, 365 F.3d at 419. However, if determining damages requires the introduction of new and substantial legal or factual issues, or the gathering of subjective evidence on the differences of each plaintiff's circumstances, resulting monetary damages are no longer considered incidental and Rule 23(b)(2) certification is inappropriate. *Id.*

The Second Circuit takes a different approach that focuses on the equitable relief sought, rather than the monetary relief. *Robinson, supra*, 267 F.3d 147, 164 (2d Cir. 2001). In determining whether monetary or equitable relief predominates, the court should examine whether reasonable plaintiffs would have brought suit to obtain the equitable relief even in the absence of a possible monetary recovery and whether the requested equitable relief would be reasonably necessary and appropriate were the plaintiffs to succeed on the merits. *Id.*

In my holding in *Colorado Cross-Disability Coalition v. Taco Bell Corp.*, I applied a hybrid of these two tests. 184 F.R.D. 354, 361–62 (D. Colo. 1999) ("*Taco Bell*"). Specifically, I found that the injunctive relief requested—requiring Taco Bell to redesign its restaurants to be compliant with the ADA—was the predominant relief sought. I found the $50-per-plaintiff damage award to be incidental because it was a statutory award that flowed directly and automatically to each member of the class. Likewise, in view of the minimum damages they sought, it was clear that the plaintiffs would have brought their suit had no damages been available. Further, success on the merits required injunctive relief: awarding money damages to the plaintiffs would not have corrected the injustice.

Plaintiff's case bears little resemblance to *Taco Bell* or *Monumental Life*—the other case upon which Plaintiff hangs his hat. In *Taco Bell*, the plaintiff class suffered an ongoing injury:

they had limited and inferior access to Taco Bell food services.  Here, the plaintiff class seeks

relief from insurance policies that were already changed by the time this action was brought.  This

case is much more like *Bolin v. Sears, Roebuck & Co.*, where the Fifth Circuit recognized that a

class of plaintiffs consisting mostly "of individuals who do not face further harm" is properly

considered as a damages class, inappropriate for 23(b)(2) certification.  231 F.3d 970, 978 (5th

Cir. 2000).  Even *Monumental Life*—which Plaintiff cites to with abandon—acknowledges that

injunctive relief would not have been proper had one million of the 5.6 million disputed policies

not still been in effect and notes that the equitable nature of a remedy does not change the

predominance analysis.  *Monumental Life*, *supra*, 365 F.3d at 416, 418.  Certainly now, eight

years after statewide policy changes, it is hard to imagine even one plaintiff that has an interest in

reformation separate from the possibility of collecting damages.

Neither can the monetary damages sought here be considered incidental to the equitable

relief sought.  For monetary damages to be incidental to equitable relief, they must "flow directly

from liability to the class as a whole on the claims forming the basis of the injunctive or

declaratory relief."  *Id*. at 416 (citing *Allison*, *supra*, 151 F.3d at 415).  The damages calculation

must be possible based on objective standards that are not dependent on an analysis of the

intangible, subjective differences of each class member's circumstances.  *Id*.

Even if I were to award Plaintiff's class the equitable relief they seek, it would do nothing

to resolve the question of damages.  As noted by the Tenth Circuit in *Clark I*, even when a State

Farm policyholder is entitled to reformation, I still must determine the effective date of

reformation based on the particular circumstances of each policy.  *See Clark I, supra*, 319 F.3d at

1242–44.  This requires extensive inquiry into the factual predicate underlying each policy and

into how a chosen reformation date would affect the expectations of the parties in entering into

each and every policy in question. *See id.* at 1243–44. Then, once the individualized effective

date of each policy's reformation is determined, I must determine the proper amount of damages

to award and compare that to the amount actually paid out. None of this is automatic, none of it

flows directly from liability, and none of it applies to the class as a whole.

Finally, unlike *Taco Bell* and *Monumental Life*, the individual damages here are quite

large. *Monumental Life* was "the ultimate negative value class action lawsuit" that probably

would not have been litigated but for the class action mechanism. 365 F.3d at 411. In *Taco Bell*,

the damages were $50.00 per plaintiff. Plaintiff here seeks damages as high as $150,000.00 per

plaintiff. Accompanying this request for damages with one for injunctive "relief" from insurance

policies that have not been in effect for nearly eight years does not disguise the truth: were it not

for damages, Plaintiff would not have brought this suit. Thus, it is clear that money damages are

the predominant form of relief sought and Rule 23(b)(2) certification is inappropriate.

## 2. Rule 23(b)(3)

Classes may be certified pursuant to Rule 23(b)(3) if questions of law or fact common to

the members of the class predominate over any questions affecting only individual members and if

class action is superior to other methods for the fair and efficient adjudication of the controversy.

While the list of pertinent factors outlined in the rule is nonexhaustive, they include: "(A) the

interest of members of the class in individually controlling the prosecution or defense of separate

actions; (B) the extent and nature of any litigation concerning the controversy already commenced

by or against members of the class; (C) the desirability or undesirability of concentrating the

litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in

the management of a class action." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615–16 (1997); FED. R. CIV. P. 23(b)(3).  I am required to take a close look at the case before me when considering whether I should certify it as a class action.  *Amchem Prods.*, 521 U.S. at 615.

a.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.  While there is no distinct test for measuring the quantity or quality of the issues sufficient to meet the predominance standard, it is clear that the standard is "far more demanding" than that sufficient to meet the commonality element of Rule 23(a)(2).  *See id.* at 623–24; WRIGHT & MILLER, *supra*, § 1778.  If the main issues in a case require the separate adjudication of each class member's individual claim, a Rule 23(b)(3) action would be inappropriate.  WRIGHT & MILLER, *supra*, § 1778.  However, "the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

State Farm claims the determination of liability will turn on a myriad of individualized factual and legal determinations for differently situated class members.  A review of *Clark I*, however, belies this contention.  Under *Clark I*, a pedestrian injured by a State Farm driver who was not offered extended pedestrian PIP benefits is entitled as a matter of law to reformation of the applicable policy to include those benefits.  *See Clark I*, *supra*, 319 F.3d at 1241.  When determining liability for the purposes of reformation, *Clark I* does not require any individualized inquiry into the circumstances in which the policy was issued.  The rule is black and white.

However, *Clark I* and *Clark II* recognize the numerous individualized inquiries necessary to determine the appropriate date of reformation and amount of benefits or damages to which each plaintiff would be entitled, if any.

Common questions of law or fact may predominate even if each individual plaintiff's damages requires a separate inquiry. *See, e.g., Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006); *Sterling, supra*, 855 F.2d at 1197. While some courts have found the issue of damages to be so complex as to preclude predominance, this does not appear to be one of those cases. *See Steering Comm.*, 461 F.3d at 602 (discussing cases). As Plaintiff properly points out, once liability is determined, the amount of damages can be mechanically calculated using a mathematical formula that subtracts the amount of benefits paid from the amount due under a full extended PIP benefits plan. *See id*. Thus, while still highly individualized, the calculation of damages here would not be so onerous as to preclude predominance.

The date of reformation creates a thornier issue. *Clark I* requires I undertake an extensive analysis of factual and equitable issues before determining an appropriate date of reformation, and that I evaluate these factors on the basis of the strength of the equitable and policy considerations underlying each. *Clark I, supra*, 319 F.3d at 1243–44. In the case of multiple plaintiffs, determining each plaintiff's date of reformation would require a significant amount of time and resources. Reflecting on *Clark II*, my analysis of State Farm's liability and Plaintiff's damages required less than two pages of opinion. My analysis of the appropriate reformation date required seven. Under the mandate of *Clark I*, I could make no less searching an analysis for each putative plaintiff here. Thus, I find and conclude analysis of the reformation date of each individual policy will be the predominant issue if this class is certified. Because the reformation analysis is highly

-20-

fact-specific and individualized under *Clark I*, common issues do not predominate and this class is inappropriate for 23(b)(3) certification.

### b.  Superiority

When considering whether class action is a superior method of adjudication, I take a close look at the costs and benefits of proceeding as a class to those of proceeding individually. *Amchem, supra*, 521 U.S. at 616.  A class action must represent the best available method for the fair and efficient adjudication of the controversy.  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001).  As noted by Plaintiff, a class action is designed to provide compensation that cannot be achieved through normal channels.  *See Warnell v. Ford Motor Co.*, 189 F.R.D. 383, 388 (N.D. Ill. 1999).  Inherent to this consideration is an examination of the remedies already available to plaintiffs without proceeding as a class.

"While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."  *See Amchem, supra*, 521 U.S. at 617.  Contrary to Plaintiff's assertions, this is not a case where the cost of proceeding individually will prevent plaintiffs from receiving the benefits they are due.  Numerous Plaintiffs have already filed related individual suits in various Colorado state and federal courts.  Further, as previously noted, the damages available to each Plaintiff here are high.  Where the amount of damages available to each plaintiff is high, each individual has a substantial interest in proceeding independently and thereby controlling the prosecution of his case.  *See id.* at 616–17.  This cuts against a finding of superiority.  *See Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 531 (D. Md. 2001).

The facts here are somewhat unique in that State Farm already has taken the unusual step of providing the entire putative class with the opportunity to receive the maximum payment to which they would be entitled if this class action resolves fully in their favor.  These voluntary payouts have been undertaken without incurring the Court's time, and without accruing attorney fees that will inevitably have to be paid by the plaintiff class or State Farm at the resolution of this action.

Courts have long considered the effect of proceeding as a class action on the final award available to each plaintiff, as well as the increased liability that would accrue to defendants.  *See, e.g., Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 347 (10th Cir. 1973) (holding that it was not error for the trial court to consider the fairness of certifying a class action when so doing would subject defendant to a potentially excessive and oppressive damages judgment); *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274, 278 (Colo. Ct. App. 1993) (holding it was not error for the trial court to deny class certification based, in part, on the greater damages available to individual plaintiffs when compared to class plaintiffs).  State Farm has offered—voluntarily, and without requiring individual litigation—plaintiffs an award that is equal to the award they could receive should they succeed in litigation.  In light of this, I am led to believe that "the only persons to gain from a class suit are not potential plaintiffs, but the attorneys who will represent them."  *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 571 (2d Cir. 1968) (Lumbard, C.J., dissenting).

Finally, Plaintiff has not convinced me that proceeding as a class action would be any more manageable than proceeding individually.  The question of liability has been all but decided by *Clark I* and *Clark II*, and the only remaining issues are damages and reformation date, both of

which require intensive individual inquiry.  Thus, proceeding as a class action is not a superior method of adjudication.

### III.  MOOTNESS/STANDING

Even if I found the case to be suitable for class certification, Plaintiff would be unable to be a class representative because I do not have jurisdiction to hear his claims.  To pursue a case in this Court, Plaintiff must satisfy the twin requirements of standing and mootness.  *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007).  Without a live, concrete controversy, his claims are moot, and he lacks standing.  I therefore lack jurisdiction to consider his claims no matter how meritorious.  *Id*.

To establish standing, Plaintiff has the burden of showing he has suffered an injury in fact, traceable to State Farm, that can be redressed by a favorable decision of this Court.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Standing is first determined by inquiring to the time the action was brought.  *Mink, supra*, 482 F.3d at 1253.  If Plaintiff lacked standing at that time, his case must be dismissed.  *Id*.  Further, Plaintiff "must maintain standing at all times throughout the litigation" for this Court to retain jurisdiction.  *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006).

When claims become mooted by subsequent events, a plaintiff no longer has an injury that can be redressed by this Court.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 192 (2000) (holding federal courts lack constitutional jurisdiction over cases in which one or both of the parties plainly lack a continuing interest, as when the parties have settled).  After accepting payment in full for the judgment entered in his favor, Plaintiff no longer has a personal stake in the outcome of this litigation.  *In re Special Grand Jury 89-2*, 450 F.3d

1159, 1171 (10th Cir. 2006).  I therefore no longer have jurisdiction to hear his case.  *Lippoldt*,

*supra*, 468 F.3d at 1216–17.

Plaintiff's claims for equitable relief are also moot.  The longstanding principle of

mootness prevents the continuation of a suit seeking solely equitable relief when there is no

reasonable expectation that the wrong will be repeated.  *Gwaltney of Smithfield, Ltd. v.*

*Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987).  State Farm changed its policy regarding

extended PIP benefits for pedestrians in 1999.  There is no reasonable basis from which I can

form a belief that State Farm will change its policy again in the future in a way that will harm

Plaintiff.  For these reasons and those stated in Part II.A.3, *supra*, I find Plaintiff lacks standing to

pursue his claims.

## IV.  CONCLUSION

Accordingly, I ORDER that Plaintiff's May 14, 2007, Motion for Class Certification [**Docket #**

**205**] is DENIED.

The last breath of life in this case was the question of class certification.  Nothing else remains.

Accordingly, I further ORDER that this action is DISMISSED, each party to bear its own costs.


Dated: September ___18___, 2007 in Denver, Colorado.

BY THE COURT:

____s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE

-24-